1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ATSU O. ACOLATSE, | ) | Case No.: 10-CV-02024-LHK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT; GRANTING |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | DEFENDANT'S CROSS-MOTION FOR |
| Security, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Atsu O. Acolatse ("Plaintiff") brings this action pursuant to 42 U.S.C. Sections

405(g) and 1383(c) to obtain review of Defendant Social Security Administration's ("Defendant"

or "SSA") final decision denying his claim for disability insurance benefits.  Plaintiff seeks an

order reversing the SSA's final decision and awarding benefits, or alternatively remanding for a

new hearing.  Presently before the Court are the parties' cross-motions for summary judgment.

Having considered the parties' papers and the administrative record, the Court DENIES Plaintiff's

motion for summary judgment, ECF No. 31, and GRANTS Defendant's cross-motion for summary

judgment.  ECF No. 38.

## I.  BACKGROUND

### A.  Factual History

Plaintiff alleges he suffered from kidney disease, which began in 1991, deteriorated to the

United States District Court
For the Northern District of California

point of kidney failure, and necessitated a kidney transplant on January 22, 2008.  Administrative

Transcript ("Tr.") 75, 476; Pl.'s Mot. 7.  His symptoms, which included high blood pressure, back

and flank pain, swelling, dizziness, shortness of breath, and fatigue, caused him trouble lifting,

moving, standing, and sitting for extended lengths of time.  Tr. 75, 105, 109, 476.  Plaintiff ceased

work as a warehouse clerk on July 15, 1992, allegedly due to these symptoms.  *See* Tr. 75, 94; Pl.'s

Mot. at 4.

Plaintiff pursued medical treatment for his kidney disease in the United States until 1994,

when he returned to the country of his birth, Ghana.  Tr. 476.  During his time in Ghana, from 1994

to 2000, Plaintiff was treated by "traditional practitioners," who prescribed "herbs and dietary

supplements."  Pl.'s Mot. at 5.  According to Plaintiff, these traditional practitioners repeatedly

tested his blood, and the results of those tests are part of the record.  Pl.'s Mot. at 6; Tr. 324-52.

Plaintiff returned to the United States in 2000.  Pl's Mot. 5.  From 2000 to 2002, he was

treated for kidney disease at Santa Clara Valley Medical Center.  Tr. 133-213.  Santa Clara Valley

Medical Center performed several tests on Plaintiff, including: blood tests, *see, e.g.*, *id.* at 197, 209;

a CT-guided biopsy, *id.* at 141, 209; and an exercise tolerance test on June 2, 2000, indicating that

Plaintiff had "good functional capacity."  *Id.* at 213.  From 2002 to 2004, Plaintiff was treated at the

U.S. Medical Center for Federal Prisoners, in Springfield, Missouri.  *Id.* at 355-58, 388-414.  The

U.S. Medical Center also performed tests on Plaintiff's blood, and began dialysis treatment for

Plaintiff's kidney disease in February or March 2003.  *Id.* at 353, 357, 588.  Since 2004, Plaintiff

has been treated at El Camino Renal Group, where he has primarily seen Dr. Cynthia Lin.  *Id.* at

214-320.

**B. Procedural History**

On May 24, 2004, Plaintiff applied for disability insurance benefits based on his kidney

disease.  *See* Tr. 58-60, 75.  Following the application's initial denial, *id.* at 41, Plaintiff filed a

request for reconsideration on August 26, 2004.  *See id.* at 46, 105.  This request was also denied

on October 15, 2004.  *Id.* at 47.  Plaintiff's request for a hearing before an ALJ was granted, *id.* at

52-54, and on November 22, 2005, ALJ Hannon issued a decision denying disability insurance

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

1   benefits. *Id*. at 23-25.  ALJ Hannon concluded that, while Plaintiff was currently disabled, there

2   was no evidence showing Plaintiff was disabled on or before December 31, 1997, his date last

3   insured. *Id.* at 25.

4          Plaintiff filed a complaint requesting judicial review of ALJ Hannon's decision on October

5   20, 2007, *Acolatse v. Astrue*, 7-CV-04262-PVT (N.D. Cal. Oct. 29, 2007), ECF No. 1.  On April

6   16, 2009, Magistrate Judge Trumbull concluded that ALJ Hannon had "committed legal error in

7   not considering all of the pertinent medical evidence presented and for failing to appoint a medical

8   expert to help ascertain [a disability] onset date. . . ." Tr. at 484.

9          Plaintiff received a new hearing on September 29, 2009, before ALJ Rogozen.  *Id*. at 647-

10  93.  The SSA retained a medical expert ("ME"), Dr. Gerber, to assess Plaintiff's testimony and the

11  medical evidence in the record.  *See id* at 649, 653-54.  Relying on the ME's opinion and on the

12  record, ALJ Rogozen found that Plaintiff was not disabled on or before December 31, 1997, and

13  again denied disability insurance benefits.  *Id*. at 455-67.

14         On May 11, 2010, Plaintiff filed the present complaint requesting judicial review of ALJ

15  Rogozen's decision.  *See* ECF No. 1.  Plaintiff filed a motion for summary judgment ("Plaintiff's

16  Motion") on March 24, 2011.  *See* ECF No. 31.  Defendant Michael J. Astrue, Commissioner of

17  the Social Security Administration ("Defendant"), filed a motion for summary judgment

18  ("Defendant's Motion") on April 13, 2011.  *See* ECF No. 38.  Plaintiff filed his reply to

19  Defendant's motion on April 27, 2011.  ECF No. 39.

20         **II.  LEGAL STANDARDS**

21              **A.  Standard for Reviewing the ALJ Decision**

22         The Court has authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g).  The

23  Court may only disturb the ALJ decision if it is unsupported by substantial evidence in the record

24  as a whole or if it did not apply the proper legal standard.  *Vertigan v. Halter*, 260 F.3d 1044, 1049

25  (9th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept

26  as adequate to support a conclusion."  *Id.* at 1049 (citing *Richardson v. Perales*, 402 U.S. 389, 401

27  (1971)).  Even if the evidence supports more than one rational interpretation, the Court must still

28

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  uphold the ALJ's conclusion.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

2                    **B.  Standard for Determining Disability**

3          The Social Security Act defines disability as the "inability to engage in any substantial

4  gainful activity by reason of any medically determinable physical or mental impairment which can

5  be expected to result in death or which has lasted or can be expected to last for a continuous period

6  of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A) (2006).  The SSA regulations list

7  certain impairments that meet the definitional requirements of disability.  20 C.F.R. § 404, Subpart

8  P, App. 1 (2011).  To qualify for disability insurance benefits, a claimant must show that his

9  impairment or combination of impairments met or medically equaled these requirements, *id.* §

10  404.1525(d), on or before the date he was last insured.  Social Security Regulation 83-20, 1983

11  SSR LEXIS 25, at *1 (SSR 1983).  An impairment which does not reach disabling severity during

12  Plaintiff's insured period is not a basis for qualification for disability benefits, even if the

13  impairment *commenced* during that period.  *See Steimer v. Gardner*, 395 F.2d 197, 198 (9th Cir.

14  1968).

15       **III.  ANALYSIS**

16          ALJ Rogozen denied disability insurance benefits because he determined that Plaintiff

17  failed to establish he was disabled on or before December 31, 1997.  Tr. 23, 458.  Plaintiff

18  contends his disability met or medically equaled the SSA's requirements on or before December

19  31, 1997.  Pl.'s Mot. 2.  Plaintiff claims that he is therefore entitled to disability benefits.  *Id.*  This

20  Court considers whether ALJ Rogozen's decision is supported by substantial evidence or if it failed

21  to apply the proper legal standard.

22          **A.  ALJ Rogozen's Disability Onset Date Finding is Supported by Substantial**

23                    **Evidence**

24          Plaintiff asserts that ALJ Rogozen's disability onset date "finding is in error because it

25  disregards the acceptable medical records, testimony and non-medical records that necessitate a

26  contrary finding . . . ."  Pl.'s Mot. at 7.  However, there is substantial evidence in the record that

27  Plaintiff did not meet the definition for disability on or before December 31, 1997.

28
                                                              4

1    Plaintiff can prove eligibility for disability insurance benefits for kidney disease if, on or

2    before December 31, 1997, he: (1) was undergoing chronic hemodialysis or peritoneal dialysis; (2)

3    had received a kidney transplant in the last twelve months; or (3) recorded serum creatinine levels

4    of 4 mg/dL, with at least one of several additional listed symptoms.  20 C.F.R. § 404, Subpt. P,

5    App. 1, § 6.02.  Plaintiff admits that he did not receive a kidney transplant until 2008, Pl.'s Mot. 7,

6    and there is no evidence that Plaintiff was undergoing chronic hemodialysis or peritoneal dialysis

7    prior to December 31, 1997.  Indeed, the evidence suggests that Plaintiff did not begin dialysis

8    until February or March 2003.  Tr. 353.  Additionally, there is substantial evidence that Plaintiff's

9    creatinine levels on or before December 31, 1997, were significantly below the SSA's disability

10    requirements of 4 mg/dL.  20 C.F.R. § 404, subpart P, App. 1 § 6.02.

11    According to Plaintiff's own medical records, his creatinine levels remained at or below 1.8

12    mg/dL between 1994 and 2000.  Tr. 324, 327, 332, 337, 342, 346, 351.  Even after his return to the

13    United States in 2000, Plaintiff's creatinine levels appear to have been below the level the SSA

14    considers indicative of disability.  Records from Santa Clara Valley Medical Center show

15    Plaintiff's creatinine between 1.5 and 1.6 mg/dL in 2000.  *Id*. at 141-42, 197, 209.  As the ME

16    explained, creatinine levels are unlikely to fluctuate significantly enough that Plaintiff could have

17    reached the disability level on some untested day.  *See id*. at 672.  The earliest record of Plaintiff's

18    creatinine exceeding the disabling level of 4 mg/dL is from 2002, when Dr. Lee Levitt at Santa

19    Clara Valley Medical Center reported that Plaintiff's creatinine level was at 9.2 mg/dL.  *See id*. at

20    142.

21    Thus, there is substantial evidence supporting the ALJ's finding that Plaintiff was not

22    disabled on or before December 31, 1997.

23    **B. Allegations of Bias**

24    Plaintiff argues that ALJ Rogozen erred in "rely[ing] almost entirely upon the obvious bias

25    the ME had toward the medical treatment in Ghana" and in discounting the opinions of herbal

26    practitioners who treated him in Ghana.  Pl.'s Mot. at 10, 13.

27    *1.  ME's Alleged Bias*

28

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    If Plaintiff could show that the ME's bias rendered his testimony unreliable and that the

2    ALJ "relied heavily" on that biased opinion in deciding Plaintiff's case, the Court would have to

3    remand this case for further inquiry.  *See Whitaker v. Astrue*, No. 09-5642-RBL, 2010 WL

4    3503417, at *2-3 (W.D. Wash. Aug. 12, 2010) ("In turn, the ALJ's reliance on Dr. Lewy's opinion,

5    based on a biased review of the medical record, was improper.  The matter must be remanded to

6    the administration for further consideration.").  Here, however, "the record does not support

7    Plaintiff's contention that the medical expert was . . . biased to the degree that his testimony could

8    not be relied upon." *Fortes v. Astrue*, No. 08-CV-317-RTM, 2009 WL 734161, at *2 (S.D. Cal.

9    Mar. 18, 2009).

10    The ME evaluating Plaintiff's claim did not discount all evidence Plaintiff presented, or

11    even all evidence from Ghana.  *Cf. Whitaker v. Astrue*, 2010 WL 3503417, at *3 (finding that a

12    medical expert's bias, where the medical expert rejected or discounted "many, if not all" evidence

13    from a suspect source, was reversible error).  Instead, ALJ Rogozen credited Plaintiff's objective

14    lab tests from Ghana over the subjective testimony of Plaintiff's non-treating physicians.

15    As discussed above, Plaintiff's medical reports from Ghana indicate that Plaintiff's

16    creatinine level was at or below 1.8 mg/dL up to and throughout 1997.  Tr. 337, 342, 346, 351.

17    Plaintiff's creatinine levels, as reflected in his records, were significantly lower than the 4 mg/dL

18    required by the SSA's listing.  *Id.*  The ME credited Plaintiff's Ghanaian medical records as true,

19    and concluded from this evidence that Plaintiff's creatinine levels did not reach the level required

20    to be considered disabled under the SSA's listing on or before December 31, 1997.  *Id.* at 673.

21    Thus, there is no evidence of bias in this conclusion, nor does it "discount[] the evidence from the

22    practitioners in Ghana." Pl.'s Mot. at 10.

23    In turn, ALJ Rogozen reasonably relied on this conclusion as well as on the objective

24    evidence itself in reaching his decision denying benefits.  Thus, alleged bias of the ME is not a

25    basis to disturb the ALJ's decision here.

26    *2.  ALJ Rogozen's Alleged Bias*

27    To prevail on summary judgment on the ground that ALJ Rogozen's was himself

28

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

1    impermissibly biased, Plaintiff has the burden to show that "the ALJ's behavior, in the context of

2    the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins v.*

3    *Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551

4    (1994)).  In evaluating an ALJ's potential bias, the Court "must begin with a presumption that the

5    ALJ was unbiased." *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005) (citing *Schweiker v.*

6    *McClure*, 456 U.S. 188, 195 (1982)).  Plaintiff can rebut the presumption by showing a "conflict of

7    interest or some other specific reason for disqualification." *Id.*

8        The Court notes the care that ALJ Rogozen took to ensure that the ME reached an unbiased

9    conclusion, based on objective evidence.  When the ME described a letter from Mr. Seglah from

10   the Ghana National Association of Traditional Healers as "not a source that means very much,"

11   ALJ Rogozen proceeded to have this letter read into the record.  Tr. 651.  ALJ Rogozen also

12   specifically asked the ME to "consider[] all the evidence," including "the claimant's testimony."

13   *Id.* at 669.  ALJ Rogozen instructed the ME to consider the lab reports from 1997 and 1998, all of

14   which are from Ghana, and asked the ME for his interpretation of the creatinine levels shown in

15   those reports.  *Id.* at 670-71, 673.  Not only did ALJ Rogozen require the ME to consider the

16   Ghanaian lab reports, these reports are specifically referred to and credited throughout ALJ

17   Rogozen's decision.  *See id.* at 462, 464.

18       ALJ Rogozen properly discounted the opinions of the Ghanaian practitioners because their

19   opinions conflicted with the objective record.  While ALJ Rogozen gave "very significant weight

20   to the independent medical expert," he did so because "[the ME's] opinion was consistent with the

21   record as a whole." *Id.* at 465.  From the ALJ's decision, it is clear that the ALJ considered the

22   Ghanaian lab reports a part of this "whole" record.

23       That ALJ Rogozen gave "no weight to Mr. Seglah, a traditional healer who opined that the

24   claimant could not engage in substantial gainful employment," Tr.465, does not support Plaintiff's

25   argument that ALJ Rogozen's was biased.  Nothing in the record indicates that Mr. Seglah had a

26   medical doctorate or a foreign equivalent.  Tr. 462.  As ALJ Rogozen noted, *id.*, the SSA does not

27   include herbal healers in its list of acceptable medical sources.  20 C.F.R. § 404.1513(a) (2011).

28

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

1    "An opinion from a person who is not an 'acceptable medical source' need not be afforded any

2    deference by the ALJ." *Bourbon v. Barnhart*, No. 00-CV-4712-MMC, 2002 WL 31855298, at *4

3    (N.D. Cal. Dec. 13, 2002) (citing 20 C.F.R. § 404.1513(a); *Bunnell v. Sullivan*, 912 F.2d 1149,

4    1152 (9th Cir. 1990), *rev'd en banc on other grounds*, 947 F.2d 341 (9th Cir. 1991)).  Moreover,

5    Mr. Seglah did not even appear to have a clear recollection of Plaintiff, stating that he had been

6    "*reminded* [Plaintiff] was a patient," and concluded that Plaintiff was disabled by "issues relating

7    to, *as it turns out*, his kidneys."  Tr. at 640 (emphases added).

8         Thus, Plaintiff has failed to meet his burden that ALJ Rogozen's alleged bias was "so

9    extreme as to display clear inability to render fair judgment." *Rollins*, 261 F.3d at 858.  Moreover,

10   as discussed below, it was not legal error for ALJ Rogozen to give greater weight to the ME's

11   testimony than to Plaintiff's medical doctor from Ghana.  Accordingly, ALJ bias is not a basis to

12   disturb this ALJ's decision.

13                **C.  Resolving Conflict in Medical Evidence in Favor of the ME Is Not Legal**

14                     **Error**

15        Plaintiff argues that ALJ Rogozen erred in resolving the evidentiary conflict in favor of

16   other medical evidence indicating that Plaintiff was not disabled on or before December 31, 1997.

17   Plaintiff argues that ALJ Rogozen erred in giving lesser weight to the evidence provided by two of

18   his physicians, Drs. Pomenya and Lin.  Pl.'s Mot. at 12-15.

19        Dr. Pomenya, a medical doctor who treated Plaintiff in Ghana from October 1994 to

20   February 2000, concluded Plaintiff "was not able to do full time work," while explicitly stating that

21   no records were available on which to base this conclusion.  Tr. 379.  Dr. Lin, who has treated

22   Plaintiff since 2004 at the Renal Medical Group, submitted a declaration, edited by hand to express

23   uncertainty, concluding that "the evidence supports the *possibility* of definition disability as early

24   as 1997." *Id*. at 638 (emphasis added).

25        Where conflicts exist within medical evidence, the ALJ is responsible for resolving the

26   conflict. *See Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).  The

27   ALJ may disregard the treating physician's opinion if the ALJ sets forth "specific and legitimate

28

8

reasons" supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks omitted).  An ALJ is entitled to reject a treating physician's opinion when there are no clinical findings to support it. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ may also reject the treating physician's opinion if it conflicts with that of the ME, where the ME's opinion is supported by clinical evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Magallanes*, 881 F.2d at 751.

Plaintiff is correct that ALJ Rogozen gave little or no weight to the opinions of Drs. Pomenya and Lin.  Tr. 465.  However, ALJ Rogozen provided a reasoned explanation for doing so. He specifically stated that these doctors were given little weight because their opinions are inconsistent with the record as a whole, because Dr. Pomenya had no records from treating Plaintiff on which to base his opinion, and because Dr. Lin's opinion was speculative. *Id*. at 465. As these doctors' opinions were not supported by clinical findings, and even contradicted by the medical records available, ALJ Rogozen was entitled to give greater weight to Plaintiff's medical records and the ME's opinion consistent with those records.  Accordingly, the ALJ did not err in resolving the evidentiary conflict against Plaintiff's physicians.

### D.  Plaintiff's Subjective Testimony

Plaintiff contends that ALJ Rogozen erred in discrediting Plaintiff's "own medical testimony" without providing "'clear and convincing evidence that is supported by substantial evidence in the record.'"  Pl.'s Mot. at 14 (quoting *Parker v. Barnhart*, 67 F. App'x 495 (9th Cir. 2003)).

Social Security Regulations require the ALJ to "consider all [claimant's] symptoms, including pain, and the extent to which [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence."  20 C.F.R. § 404.1529(a) (2011).  The Regulations state:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce

9

the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

*Id.*

It is true, as Plaintiff points out, that the *Parker* court stated, "it is normally error for the ALJ not to specifically articulate reasons for not accepting a claimant's testimony." Pl.'s Mot. 14 (citing *Parker*, 67 F. App'x at 498). "[T]he ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

Here, ALJ Rogozen stated several reasons for not deferring to Plaintiff's testimony as conclusive proof that he was disabled on or before December 31, 1997. First, ALJ Rogozen stated that Plaintiff's testimony was not supported by objective medical evidence. Tr. 460-61. For example, ALJ Rogozen concluded "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the 2000] residual functional capacity assessment." *Id.* at 463. ALJ Rogozen also noted that "the medical expert Dr. Gerber testified that between, [sic] January 01, 1997 to December 31, 1998, the claimant only warranted a diagnosis of hypertension and minor renal insufficiency," and pointed to the fact that Plaintiff's laboratory results from Ghana "did not indicate seriously elevated [creatinine] levels." *Id.* at 464. ALJ Rogozen also noted that prior to 2000, Plaintiff received only routine and conservative treatment in the United States, where he was recommended "healthy eating and exercise," and in Ghana, where he received "only herbal remedies," and there was no evidence of "hospitalizations or treatments that were not of a routine and conservative nature." *Id.* As the Ninth Circuit has stated, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Thus, because ALJ Rogozen specifically articulated clear and convincing reasons for not

10

1   accepting Plaintiff's subjective pain testimony, ALJ Rogozen's decision to reject Plaintiff's

2   testimony was not legal error.

3                           **E.  Request for Remand to Consider New Evidence**

4           Plaintiff requests that the Court remand this case for consideration of new evidence

5   contained in declarations from the following individuals: two of his nephews, William Harlley and

6   Michael Dobatse; Japhet Kofi Seglah, a traditional healer in Ghana who consulted with Plaintiff's

7   primary healer in 1997; and Dr. Lin, a physician who has treated Plaintiff since 2004.  Pl.'s Mot. at

8   15; Reply 7.

9           The Court may remand for consideration of new evidence if Plaintiff shows that this

10  evidence is material, and that it is reasonably possible this evidence would have altered the ALJ's

11  decision.  *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  This

12  new evidence must "bear directly and substantially on the matter," and "must be probative of

13  mental or physical impairment."  *Id.*  Plaintiff must also show that "there is good cause for the

14  failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  "If

15  new information surfaces after the Secretary's final decision and the claimant could not have

16  obtained that evidence at the time of the administrative proceeding, the good cause requirement is

17  satisfied."  *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).  Where a "plaintiff fails to provide

18  a reason for his failure to offer the evidence earlier," he "is not entitled to remand for consideration

19  of new evidence."  *Bourbon v. Barnhart*, No. 00-CV-4712-MMC, 2002 WL 31855298, at *4 (N.D.

20  Cal. Dec. 13, 2002) (citing *Sanchez v. Sec'y of Human Health & Servs.*, 812 F.2d 509, 511 (9th

21  Cir. 1987)).

22          Plaintiff provides no explanation for why the evidence contained in the declarations of

23  Messrs. Harlley, Dogbatse, and Seglah was unavailable at the time of his Social Security hearing,

24  and has therefore failed to show good cause for not producing it earlier.  Furthermore, even if he

25  had been able to show good cause, it is not reasonably possible that the evidence would have

26  altered the ALJ's decision.

27          The declaration of Mr. Harlley describes conversations with other relatives, who told him

28

*United States District Court*
*For the Northern District of California*

11

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

1    of Plaintiff's sickness.  "[D]escriptions by friends and family members *in a position to observe* a

2    claimant's symptoms and daily activities have routinely been treated as competent evidence."

3    *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (emphasis added).  Mr. Harlley, however,

4    was in no such position, and states that his information comes from conversations he had with

5    other family members who were physically near Plaintiff.  As Mr. Harlley's evidence comes

6    second-hand, it is unlikely that it would have altered the ALJ's decision.

7            Mr. Dogbatse's declaration describes Plaintiff's illness during his time in Ghana.  Reply at

8    7.  While Mr. Dogbatse paints a sympathetic picture of his uncle, his conclusory experiential

9    testimony cannot establish that Plaintiff was so ill as to be disabled according to the Social Security

10   listing for renal disease on or before December 31, 1997.  20 C.F.R. § 404.1513(c) (requiring even

11   medical opinions to specify what actions claimants are capable of performing, rather than a

12   conclusory statement as to total disability).

13           Mr. Seglah's declaration is also unlikely to have altered the ALJ's decision, as it is virtually

14   identical to another declaration of Mr. Seglah already submitted to and reviewed by the ALJ.

15   *Compare* ECF No. 35, Seglah Decl., *with* Tr. 639-46.

16           Plaintiff has also submitted a new declaration by Dr. Lin, asserting that she has

17   "reexamined" her earlier assessment of his case.  Pl.'s Mot. at 15.  Dr. Lin's declaration, however,

18   is internally inconsistent, varying from "it is more probable than not that the patient was disabled,"

19   to "the totality of the evidence necessitates" concluding the patient was disabled.  *See* Lin Decl. at

20   2, 4, ECF No. 33.[1]  Dr. Lin refers to no new evidence or examination that has altered her opinion;

21   rather, she has reinterpreted the information previously received by her and by the ALJ.  Pl.'s Mot.

22   at 15.  Where, as here, "reports merely contain new interpretations of the same . . . problems

23   discussed in the earlier evaluations," the Ninth Circuit has found a lack of good cause for prior

24   failure to incorporate the evidence.  *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473

---

[1] While the discrepancies are now immaterial, the Court observes that the fourth page of Dr. Lin's Declaration, which is especially helpful to Plaintiff, suddenly departs from the margins, grammar, spelling, and page number font found on the other pages.  Had this case been remanded to the Social Security Administration, these inconsistencies might have led the ALJ to question the veracity of the declaration.

Case No.: 10-CV-02024-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION MOTION FOR
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1 | (9th Cir. 1984); *Key*, 754 F.2d at 1551; *Clem v. Sullivan*, 894 F.2d 328, 333 (9th Cir. 1990).  This

2 | Court is bound by these Ninth Circuit decisions.

3 |     Plaintiff has neither shown good cause for failing to provide these declarations earlier, nor

4 | submitted evidence reasonably likely to have altered the ALJ's conclusion.  Accordingly, this

5 | Court cannot remand for consideration of new evidence.

6 | **IV.  CONCLUSION**

7 |     The ALJ's conclusion that Plaintiff was disabled on or before December 31, 1997, is

8 | supported by substantial evidence in the record and is free of reversible legal error.  Accordingly,

9 | the Court AFFIRMS the ALJ's decision denying disability insurance benefits.  Therefore, the

10 | Court DENIES Plaintiff's motion for summary judgment and DENIES Plaintiff's request for

11 | remand to consider new evidence.  The Court GRANTS Defendant's cross-motion for summary

12 | judgment.  The case is DISMISSED, with prejudice, and the Clerk shall close the file.

13 |

14 | **IT IS SO ORDERED.**

15 |

16 | Dated: September 26, 2011

17 | LUCY H. KOH
United States District Judge

18 |

13